Welch, J.
This case is quite fruitful of questions. Objectionsscem to have met the court at every stage of its proceeding. They were interposed to the indictment; to the time, manner, and place-of trial; to the evidence, the instructions of the court, the verdict, and the judgment. Within the reasonable limits of a report we can- *506 do little more than simply state and decide the various points presented. We will briefly -consider them in the order in which they arose.
Four of the assignments of error relate to the sufficiency of the indictment, or, rather, of the four counts on which the defendant was found guilty.
In the first place, it is claimed that the indictment is bad as to Brown, because it does not allege that he was a public officer, or person intrusted with public money.
The argument seems to be, that as the statute declares the aider ■or participator guilty of “ embezzlement,” it must refer to and mean a person having charge of the public money, or in some way ■connected with its keeping or control; otherwise, it is said, he could not be guilty of embezzlement. We do not so understand the statute. It is true, that the statute makes the act of aiding or partici■506] pating in embezzlement *itself an act of embezzlement. But that is a mere statutory name for the offense. The statute defines two substantive offenses. One is the conversion of public money by the party intrusted with it. The other is the advising, aiding, ■or participating in the act of conversion, by any person. Each act is declared by the statute to be an “ embezzlement” and a “ misdemeanor,” in as unequivocal and direct language as could be employed for the purpose. Its plain declaration is, that “ any person ” who advises, aids,, or participates in the conversion of public money by a party intrusted therewith, is himself guilty of embezzlement.
Another objection to the indictment is, that it does not set forth what portion of the money embezzled belonged to the respective municipalities named, but merely the aggregate amount belonging to them all. The same objection is made to that part of the verdict ■of the jury which finds the amount embezzled.
To. this assignment of error it is sufficient to say that, in one ■count, these several amounts are set forth, except as to the town-i'sbips, and as to them the aggregate amount is given, with an averment that the respective amounts owned by each township are unknown to the grand jury. But we hold that these particular statements were not necessary. The substance of the offense defined by the statute consists in converting “public money,” and all that is therein said as to the ownership of the money may well be regarded as mere amplifications of the words “public money.” They are no more than specifications as to what is and what is not *507 public money. Their significance is, to denote the kind of money that may be the subject of embezzlement, and not its ownership. It seems to us therefore, that it is sufficient in an indictment under the act to allege that the money was public money, belonging to the several municipalities therein named, or to one or more of them. In a strict legal sense, no particular or specific part of this money belonged to either municipality more than to another. Certain undivided portions of it were payable to each of them, and in that ■sense, which is undoubtedly the statutory sense, belonged to them. But there is. no reason to suppose that it was any part of the intention of the «legislature to have the several amounts ascor- [507 tained and specified in the indictment. It is only necessary the indictment should show that it was public money in the statutory sense, that is, that it was public money belonging to these descriptions of municipalities. This sufficiently appears in every count of the indictment.
If we are right in this, it follows, of course, that the jury may well find in a single sum the whole amount embezzled, irrespective of the proportions owned by each municipality.
The third objection made to the in.didtment is that in one of its counts an organized borough and village, instead of an organized village, is alleged to have been one of the owners of the money emr bezzled. The proof was also objected to, because it showed that the real owner was the village of Coshocton, and not a borough and village.
This is certainly a small objection, and it is not well taken. The words “ borough and village ” are to be understood as duplicate or cumulative names of the same thing. Such are common in established forms of indictments, and proof of either‘is sufficient on the trial. Besides, this alleged defect is only found in one of the counts, leaving three good counts to support the verdict. Whether a borough is a village, and whether we have any boroughs in Ohio, the questions argupd by counsel, we need not now decide.
The remaining objection to the indictment is that it misjoins sevr eral offenses which are subject to unlike punishments. In other words, it is claimed that the fifth count, instead of being, as all the others are, a count for embezzlement, is a count for larceny.
The charge in the fifth count, in brief, is that Brown, with the assistance and consent of Netehum, took the money from the treasury. Such an act is no larceny. The money was lawfully in the *508 possession of Ketchum, and was taken therefrom by his consent. Hut was it embezzlement ? In other words, did Ketchum convert the money to Brown’s use, and did Brown participate in the act T We answer in the affirmative. As they acted in concert, every act of each was also the act of the other. If Brown took the money from the safe, Ketchum also took it; and if Brown converted the-508] *money to his own use, so did also Ketchum convert it to-Brown’s use; and surely, if Ketchum did so take and convert the money to Brown’s use, it will not be denied that Brown participated in the act. We think, therefore, that the fifth count contains a good charge of embezzlement, and that the court did not err in refusing to put the state to its election. It would be a strange construction of this statute to hold that a county treasurer who throws-open the doors of the safe, and voluntarily permits an accomplice to take the public money therefrom, is not guilty of embezzlement; and it would be equally strange to hold that the accomplice, under such circumstances, would not be guilty of participation in the act.
But it is said the court erred in putting Brown .upon his trial before the trial and conviction of Ketchum; and that the court fell into the same error in its refusal to instruct the jury that Brown could not be convicted, unless the conviction of Ketchum was first shown.
The well known common-law rule, -that an accessory can not bo tried or convicted until the principal offender has been first convicted, we do not deny. But the statute under which this indictment was found, as we understand it, makes the crime of advising, aiding, or participating in an embezzlement a substantive and independent offense. In so holding, we are only following the decisions of this court in the cases of Nolan v. The State, 19 Ohio, 131, and Allen v. The State, 10 Ohio St. 287. In those cases, the court hold that under the 36th section of the crimes act of March 7,1835, which subjects aiders, abettors, and procurers to like punishment as pi’incipal offenders under the act, such aiders, abettors, and procurers are guilty of substantive and distinct offenses. If there is any difference in this respect between the two acts, the one now under consideration is the more strongly worded for such a construction. By this act the adviser, aider, or participator is not only made liable, as by the act of 1835, to like punishment as the principal offender, but he is declared to be guilty of the same offense. His act is declared, equally with the act of the principal *509, 510 offender, to be an “ embezzlement ” and a “ misdemeanor.” Either may, therefore, be tried and convicted independent of the other.. The two offenses *are as distinctive and independent as are [509 the crime of larceny and the crime of concealing the stolen goods.
The next point in order is, that the court of common pleas of Licking county had no jurisdiction of the ease. There is no .law, say the counsel, for removing “half of a case” to an adjoining county. Both defendants, they contend, must join in the application for a change of venue, and the cause must bo removed as to both, or not at all. And the counsel say, further, that if such is not the law in cases where separate trials have first been ordered, such is the law in the present case, because no order of the kind had been made.
It seems' quite clear to us that a motion by one of two persons jointly indicted, for a change of venue as to him alone, necessarily involves and includes a motion fora separate trial; and that .the granting of such motion necessarily involves and includes the granting of a separate trial also. There was, then, in fact, an order-for a separate trial, as well as an order for a change of venue, both made on motion of the defendant; and it can hardly be seriously-denied that, for the purposes of a change of venue under the statute, and indeed for most purposes, the cases are to be considered, after an order for separate trials, as separate and distinct indictments. Such was expressly held to be the law in one of the cases-referred to (Allen v. The State, 10 Ohio St. 287). There is, therefore, no good ground for either form of this objection. Brown’s-case had become a separate case, by virtue of the order for separate-trials, and that “whole case ” was removed to Licking county.
As to the question whether the court erred in failing to order a second venire for the struck jury, and impaneling a new jury to try the case, it is enough for the present case to say that the defectivevenire was set aside at defendant’s request, and that the new jury was impaneled vpthout objection by him. He took no exception to the proceeding, and what was done was done upon his motion, or with his acquiescence and concurrence. If the objection ever could have been made, it was waived. Wo see no error in this. .
The next question is : Was Ketchum a competent witness for the state, standing as he did jointly indicted with Brown ?
,*The authorities already cited answer this question in the [510' affirmative. Where separate trials are awarded to parties jointly *511 Indicted, each is a competent witness for the state, upon the trial of ‘the other, without being first acquitted or convicted, and without a .nolle prosequi being first entered upon the indictment. The objection goes to his credit, and not to his competency. This has been "the settled law of the state for years; and surely the present is no ■¡time to change it, when the manifest tendency of our legislation is ■to narrow, instead of enlarging, the grounds of objection to the competency of witnesses.
But it is contended that if Ketchum was competent when called to the stand, he became incompetent, or, rather, his testimony wholly and utterly incredible, by his subsequent admission that he , had been guilty of perjury in his former examination in relation to the same subject-matter, and that the court erred in refusing so to instruct the jury.
The law seems to us to be otherwise. The fact of perjury, even ■when admitted by the witness upon the stand, without a legal conviction of perjury, does not render him incompetent, or necessarily .and wholly unworthy of credit. We think the court did not err in ¡refusing the instruction asked, and instructing the jury that they might find the defendant guilty upon the testimony of Ketchum, «corroborated as to one or more material facts, notwithstanding his .infamy, and complicity in the crime.
Did the court err in its instruction to the jury with regard to Brown’s motive in suppressing these notes ? We think not. Where • a party is shown to have made false statements, which, from their nature, might have been prompted by his consciousness of guilt, or 'by other sinister motives, it is for the jury, and not for the court, to -.say, from all the circumstances, to which motive it should rather be attributed.
The objection to the competency of this evidence is answered, we ■think, by saying that it was not offered to prove that Brown had ¡sworn to a false statement. The apparent object was to show that his statement was substantially true, to wit, that these suppressed .511] notes were mere nullities or ^fictions, supported by no real consider ation, and therefore no real part of his estate.
Yarious other exceptions are taken to the charge of the court, but it is not necessary to notice them further than to say we do not -deem them well taken. It is true, as counsel say, that the charge 'is of unusual length ; but that is rather matter of taste than of daw. The court laid down to the jury many propositions of law *512 which might better have been omitted, but, it seems to us, laid them down correctly, and with sufficient clearness — certainly with sufficient fullness. And while some of the objections to isolated parts of the charge might seem well founded,-as a whole the charge .seems to us to be unexceptionable in point of law. The court tells the jury, it is true, that they may “look at the whole life ” of the defendant. But the context shows clearly that the court meant “so far as his life is shown by the evidence;’’ which, in fact, does •seem to cover a very large portion of his life. Again, the court ■says: “And other evidence there is, as the state claims, to identify certain money the defendant had in his possession,” etc.; by whicB. the court, in view of the whole charge, can only mean to say that the state claims that there was such evidence. And so of other parts of the court’s charge, and its commentaries upon the evidence; ns a whole, it seems to us to be impartial, and in accordance with rthe law of the case.
Nor do we deem it necessary particularly to notice the many «exceptions taken to the orders of the court admitting testimony on the part of the. state. They involve no questions useful to be reported. The answer to most of these exceptions is found in the fact that the evidence was offered only for a qualified purpose, and that the jury were instructed only to consider it in that light. 'The books containing settlements made by Ketchum, if they were not competent, as against Brown, to show the amount of the embezzlement, were at least competent to show the amount testified to by Ketchum; for he testified that the amount received by Brown -was the amount appearing in the books, less a certain sum. ' Other papers and documents were admitted/which were competent, not .as evidence of their verity, but as circumstances ^explanatory [512 of the motives and conduct of Brown, and in that light only, as we ■understand the court, were the jury instructed to regard them.
Four several exceptions are taken to the verdict of the jury.
The first of these is that it does not find Ketchum guilty of con■verting the money.
This exception is not true in fact. The verdict finds Brown .guilty, and his guilt necessarily involves th^ guilt of Ketchum. It is not a verdict against Ketchum. As to him it is a nullity. ' It is a verdict against Brown alone, but as to him it is a verdict finding fhe guilt of both.
In the second place it is objected that the jury did not find *513 whether the guilt of Brown consisted in aiding or participating in-the embezzlement.
The obvious answer to this objection is that Brown is charged* in the indictment with both aiding and participating; and the-jury, by their general verdict, have found him guilty of both. The-jury do not, as counsel seem to suppose, find that Brown is guilty of aiding, as charged in one count, and of participating, as charged-in a different count. They find him guilty of both offenses (if they are different' offenses) under each count. If there is any one-good count in the indictment, then the verdict must stand as a sufficient finding of both offenses under that count alone.
A third objection made to the verdict is that the jury do not find at what several times, or in what several amounts, the money was-converted; or how much of it consisted of the money specified in the several counts of the indictment.
Nothing is better settled than the rule that a general verdict' upon several counts will be sustained where either count is good. We perceive no reason why this rule is not equally applicable to-that part of the verdict finding the amount of money embezzled, as to that part of it which finds the general guilt of the defendant. Both are charged, and both must be found to enable the court to-pronounce the proper penalty. Now, each count of this indictment charges Brown with participating in the embezzlement of $20,036. The jury have found him guilty on all four of the counts.. In theory the indictment charges Brown with four several embez513] zlements, and *the jury thus found him guilty of embezzling-four times that amount. If this were true in fact, the court would inflict four several punishments. . But it is only a fiction, and the several counts are only so many forms of charging a single offense. Brown can not claim the benefit of the fiction without submitting-to its burden. For the purposes of this question, then, the indictment is to be regarded as charging a single act of embezzlement, as if there was but a single count, and that the amount of that single-embezzlement was $20,036. The jury have found a less amount. They have found him guilty of embezzling $20,000, as charged in either of the counts of-the indictment. The court will look to see-if there is one good count among them, and if there is, the court will inflict the punishment as upon that count. Still the court will only inflict one punishment, because there is in fact but one offense-
The last error assigned is, that the verdict is against the evidence-
*514 And first under this head is an objection very similar to the last «one considered, though not identical with it. It is, that the evidence shows there was in fact an indefinite number of separate and distinct acts of embezzlement, and that the jury could only properly find the amount embezzled at one time — or at most only the amount embezzled at four several times, corresponding with the four counts of the indictment — whereas they have found the aggregate amount. 'The answer is, that the evidence shows a continuous series of conversions of the money, in pursuance of a conspiracy. Such evidence is sufficient to support a finding by the jury of the aggregate sum as the amount of a single' embezzlement. It was in fact and in law a single embezzlement. Were it otherwise, the particular conversions could never be ascertained or proven, and there would have to be, in some cases, almost as many counts in the indictment as there were dollars in the money embezzled.
But the main ground assumed under this assignment is, that the verdict of .guilty against Brown is against the weight of the evidence.
*This is purely a question of fact, and its consideration in- [514 volves nothing, perhaps, that can be useful in a report of the case. 'The testimony is exceedingly voluminous, and I will content myself with a single comment upon its general nature and bearing. Its ■vital part is' the story told by Ketchum. Without that, there is -clearly nothing beyond a mere case of suspicion; and yet with that story, corroborated as it is by the other evidence in the case, there .is sufficient to warrant the conviction, provided the story of Ketchum ■can be at all supported as probable or reasonable in itself. That it is not probable and reasonable in itself, is the proposition mainly ■insisted upon by counsel. They say it is extremely inprobable that Ketchum should agree to commit this crime, and to give all its fruits to an accomplice, with these notes for $19,600 thrown in, and reservo nothing to himself but the pleasure of being tied and gagged. I confess that at first view this story appeared to me utterly improbable ; but on reflection I have changed my mind. It is a strange story, and yet its very strangeness affords a kind of evidence of its truth, when considered in connection with the surrounding circumstances. The two elements which most abound in this story — strangeness jmd self-crimination — are seldom found in the fabrications of a false witness. Such fabrications are always aimed to be plausible, and •exculpatory of the witness. Told in a different form, what is Ketchum’s story? It is this: Ketchum had innocently become a *515 defaulter, and was distressed over his loss; Erown knows the fact,, and adds to Ketchum’s distress by a quasi threat of exposure, artfully suggesting, at the same time, that if a robbery of the treasury should happen, Ketchum would be relieved. The idea takes with Ketchum, who thenceforth prays for a robber. Brown answers and says: “ I myself will be the robber if you will sufficiently indemniiyme. If I rob you, I will be in your power; you will only have to-inform on me and send me to the penitentiary: give me an equal weapon to hold over your head, and I will run all the risks of the-robbery. Give me your notes for more than you are worth, and give me written evidence that you forged Ferguson’s name to one of the notes, and then we will both have ample guarantees that. 515] *the notes, the forgery, and the-robbery will forever be suppressed.” The bargain is struck, and the robbery enacted. And these weapons, thus put into each other’s hands, are the very weapons used when the war subsequently breaks out between them. The first blow struck by Ketchum is a prosecution of Brown for the-robbery, and Brown responds by a judgment on the $18,000 note, and a prosecution for the forgery. The only available weapon leftKetchum was the truth of the transaction, and he at last falls back upon that. Looked at in this light, I am not prepared to say that the story is improbable in itself; but supported as it is by the other proof — Brown’s utter failure to account for these notes, and their suppression upon any other theory than that of Ketchum, the apparent sudden increase of Brown’s monetary means, his concealment of money in the cellar, the false account he gave as to the source from which he had obtained money, and other evidence in the case— we are quite unable to say that the jury were not right in finding-it to be true.
The law requiring a review of the facts on jjetition in error has-imposed upon the court an immense labor in the present case. We-have not shrunk from that labor. The result is the conviction that the rulings of the court and finding of the jury are in accordance with the law and the facts of the case.
The judgment is affirmed.
Day, C. J., and Brinkerhoff, Scott, and White, JJ., concurred.